1                    UNITED STATES DISTRICT COURT

2                    WESTERN DISTRICT OF NEW YORK

3

4

5        - - - - - - - - - - - - - - X
         UNITED STATES OF AMERICA    )    10cr6038
6                                    )
         vs.
7                                         Rochester, New York
         DAVID RINERE,               )    November 21, 2011
8                  Defendant.             11:07 a.m.
         - - - - - - - - - - - - - - X
9        **SENTENCE**

10

11                       TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE CHARLES J. SIRAGUSA
                       UNITED STATES DISTRICT JUDGE
12

13

14                    WILLIAM J. HOCHUL, JR., ESQ.
                      United States Attorney
15                    BY: MARISA MILLER, ESQ.
                          CRAIG GESTRING, ESQ.
16                    Assistant United States Attorney
                      6200 Federal Building
17                    Rochester, New York 14614

18

19                    MEHMET K. OKAY, ESQ.
                      PO BOX 622
20                    Batavia, New York 14020
                      Appearing on behalf of the Defendant

21

22                    S. Whitcomb, USPO

23

24       COURT REPORTER:  Karen J. Bush, Official Court Reporter
                          (585) 613-4312
25                        100 State Street
                          Rochester, New York 14614

1                       USA VS. D. RINERE

2                     P R O C E E D I N G S

3                      *          *          *

4

5

6

7           THE COURT:  For the record, this is the matter of

8    the United States versus David Rinere.  You are David Rinere?

9           THE DEFENDANT:  Yes, sir.

10          THE COURT:  And you're appearing with your

11    attorney, Mr. Okay; is that correct?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  The Court notes the presence of Ms.

14    Miller on behalf of the government; and Ms. Whitcomb is pinch

15    hitting on behalf of Mr. Spogen for probation.  As you know,

16    this matter is on for sentencing and in that regard I have

17    received and reviewed the following:  The presentence

18    investigation report prepared by Mr. Spogen as revised dated

19    October 13th, 2011; the government's statement with respect to

20    sentencing factors dated November 15th, 2011; the government's

21    letter dated October 16th, 2011 regarding the victim's mother's

22    request to be heard during the sentencing hearing; an undated

23    letter from the victim's mother; an undated letter from the

24    victim's grandmother, Ms. Bigato; an undated letter from the

25    victim herself; I received the defendant's statement with

1                      USA VS. D. RINERE

2    respect to sentencing factors dated November 17th, 2011; I've

3    also received the defendant's revised statement with regard to

4    sentencing factors dated today's date, and the defendant's

5    motion for an extension of time to file the documents that were

6    submitted today.  And I've also received a sentencing

7    memorandum from the defendant dated November 21st, 2011.

8    Before we proceed, I do want to note that I'll grant the

9    application for the late filing.  However, in the amended

10   filing which I've now accepted, I'm reading under No. 2 and

11   2(a) it says, relative to paragraph 37 of the presentence

12   report, the defendant denies that he was ever sexually involved

13   with the minor victim.  Relative to paragraph 61 of the

14   presentence report, the defendant denies vaginal, anal, oral

15   and digital intercourse with the minor victim.  I do note that

16   in the plea agreement itself in paragraph 10(b) it reads the

17   government and the defendant agree that the following specific

18   offense characteristics do apply.  (B), the two-level increase

19   pursuant to Guideline Section 2G2.1(b)(2)(A) an offense

20   involved the commission of a criminal sexual act -- excuse me

21   -- of a sexual act.  The Guidelines in defining sexual act

22   refuse 18 U.S.C. section 2462.  The term "sexual act" means:

23   Contact between the penis and the vulva or the penis and the

24   anus.  And for the purpose of this subparagraph contracting

25   involving the penis occurs upon penetration however slight.

1                          USA VS. D. RINERE

2      (B) contact between the mouth and the penis, the mouth and the

3      vulva, and the mouth and the anus (C) the penetration, however

4      slight, of the anal or genital opening of another by a hand,

5      finger or by any object with intent to abuse, humiliate,

6      harass, degrade or arouse or gratify the sexual desire of any

7      other person.  (D) the intentional touching, not through the

8      clothing, of the genitalia of another person who has not

9      obtained the year of sixteen years with an intent to abuse,

10     humiliate, harass, degrade or arouse the sexual desire of any

11     person.

12                  I would also note according to what the court

13     could determine based upon the presentence report that the

14     defendant was indicted in Monroe County in 2010 on indictment

15     No. 369 with multiple counts of sexual act in the second --

16     multiple counts of criminal sexual act, rape in the second,

17     endangering the welfare of a minor, and sex abuse in the third.

18     Apparently, a number of those charges, or at least a couple of

19     those charges, were dismissed, but the remaining charges are

20     still pending in indictment No. 369.  Additionally, it appears

21     that on January 24th of 2011 the defendant was indicted again

22     in Monroe County for rape in the second degree, three counts

23     sexual abuse in the third.  For some unknown reason to me there

24     has been no arraignment on the new indictment.  The first

25     indictment, some of which the charges were dismissed, he was

```
 1                         USA VS. D. RINERE
 2    arraigned, and, apparently, that is on tomorrow, the Court
 3    assumes.  And there is an indication that the victim is the
 4    same as the victim in this case.
 5                  So we're confronted, Mr. Okay, with your position
 6    that your client did not commit any sexual acts in the face of,
 7    I'm assuming, an indictment returned in Monroe County court
 8    which found probable cause that he did exactly that, and in the
 9    face of a plea agreement in which he said that he, again, I'm
10    quoting, that paragraph 10(b) of the plea agreement:  The
11    two-level increase pursuant to Guideline Section
12    2G1.1(b)(2)(A), an offense involved the commission of a sexual
13    act.  Now, obviously there is a factual dispute, despite what's
14    indicated in the plea agreement, to be fair to your client, I
15    want to the factual dispute resolved.  The Court would have to
16    determine by a preponderance of evidence that a sexual act did
17    occur.  I reviewed the transcript, which I have.  Because the
18    charge did not involve the actual commission of the sexual act,
19    the factual portion of the plea agreement which the Court uses
20    as a base line in taking a plea did not specifically include
21    allegations that he engaged in a sexual act.  The Court did not
22    specifically inquire into those.
23                  MS. MILLER:  Your Honor, if I may, the
24    government's reading of the transcript is that sexual contact
25    was raised by the Court twice.
```

```
 1                    USA VS. D. RINERE
 2               THE COURT:  Where?  I have the transcript.
 3               MS. MILLER:  On pages 32 at lines 22 through 25.
 4               THE COURT:  Hang on a second.  32, lines 22
 5     through 35.
 6               MS. MILLER:  Twenty five, your Honor.
 7               THE COURT:  Let me read those for the record.
 8     Start with 19 on page 32.  The Court:  Mr. Rinere, you had to
 9     know doing this was wrong, is that a fair statement the
10     defendant:  I'm sorry I didn't hear you.  The Court:  You had
11     to know that being involved in this relationship, which
12     apparently was some sexual relationship with the girl, was
13     wrong, fair statement.
14               Yes, sir.
15               The Court --
16               MS. MILLER:  And, your Honor, continuing then on
17     page 33 beginning at line 15.
18               THE COURT:  Let me pick it up on 15.  The Court:
19     I understand, but the fact remains you knew the photographs
20     were photographs of a 13 year old and that they were sexually
21     explicit and what you're telling me that you did engage in
22     sexual acts with her.
23               You're right.
24               Is that a fair statement.
25               Yes, sir.
```

1                    USA VS. D. RINERE

2              Mr. Okay, is it your client's position that he did

3     not engage in sexual acts with the victim.

4              THE DEFENDANT:  Yes, it is.

5              MR. OKAY:  Your Honor, if I could just add

6     something.  If we don't object to the -- what's in the PSR,

7     it's deemed admitted as fact.  And there is an outstanding

8     prosecution in state court now where that could be used against

9     him.  And so that puts us in a difficult position here.

10             THE COURT:  You're in a Hobson choice.  But here

11    is what I would do.  I'm going to adjourn sentencing, you can

12    submit to me -- listen.  You can submit to me an affidavit from

13    the victim and I will order a hearing.  I can -- at a hearing,

14    I can determine what is reliable.  In other words, hearsay is

15    admissible.  And I need to base any decision on what I consider

16    reliable.  Certainly something under oath in an affidavit form

17    the Court can consider reliable evidence.  Mr. Okay, I'll give

18    your client a chance to offer, if he wants to offer testimony,

19    he can offer testimony.  I'm pointing out 3E1.1, "Acceptance of

20    Responsibility" application note No. 1:  In determining,

21    whether a defendant qualifies under subsection (a) appropriate

22    considerations include but are not limited to the following:

23    Truthfully admitting the conduct comprising the offense of

24    conviction; and truthfully admitting or not falsely denying any

25    additional relevant conduct for which the defendant is

1                          USA VS. D. RINERE

2    accountable under 1B1.3, "Relevant Conduct."  Note that a

3    defendant is not required to volunteer or affirmatively admit

4    relevant conduct beyond the offense of conviction in order to

5    obtain a reduction under subsection (a).  A defendant may

6    remain silent in respect to relevant conduct beyond the offense

7    of conviction without affecting his ability to obtain a

8    reduction under this section.  However, a defendant who falsely

9    denies or frivolously contests relevant conduct that a Court

10   determines to be true has acted in a matter inconsistent with

11   acceptance of responsibility.  So, I point that out as well.

12   That if the defendant -- if I determine the defendant is

13   affirmatively falsely denying this, he could lose two points.

14   I'm not sure of the last one but he could lose two points for

15   acceptance.  And, also, there could be an issue of perjury

16   during the course of a sentencing hearing, which could result

17   in a two-point increase.  If that -- I'm not saying that were

18   to happen.  But if that were to occur, if that were to occur,

19   the defendant's offense level would be increased by -- could

20   potentially be increased by a total of three, which would take

21   him to -- from what, potentially -- which would take him from a

22   36 to a 39; is that correct?  I'm not saying that would occur.

23   Again, I realize there is the issue of distribution as well.

24   But with a 39, I mean, the recommended range under the advisory

25   Guidelines would then become the statutory maximum of 240

```
 1                      USA VS. D. RINERE
 2    months.  I'm again trying to be fair to the defendant.  I mean,
 3    I didn't specifically get into the nature of the sexual act
 4    because I didn't think it was relevant at the time.  However,
 5    if he is contesting that there was some confusion, but the fact
 6    remains that these photographs were photographs of a
 7    13-year-girl and were sexually explicit.  And what you're
 8    telling me you did engage in sexual acts with her, is that a
 9    fair statement.  Now, I didn't define sexual acts, but
10    certainly if your client wants to submit an affidavit or
11    testify.
12                 MR. OKAY:  Your Honor, my client has just
13    indicated to me that he is willing with withdraw the revised
14    statement of parties with respect to sentencing factors and we
15    would default back to the one we filed on November 17th, which
16    doesn't have any of those objections in it.
17                 THE COURT:  Mr. Rinere, let me ask you this.
18                 THE DEFENDANT:  Yes, sir.
19                 THE COURT:  Again, my job is to be fair in this
20    case.  And if there was any confusion -- and I'm telling you
21    that I didn't specifically, as I did, today, define what a
22    sexual act is.  Presumably somebody could think a sexual act is
23    taking a picture.  And that is not the way it's defined under
24    law.  So, to give you the benefit of the doubt, what I'm
25    indicating is I would require Ms. Miller to provide an
```

1                          USA VS. D. RINERE

2      affidavit from the victim detailing, if it was the truth, her

3      account of any sexual intercourse, anal intercourse, digital

4      penetration that you may have had with her, and I will give you

5      a chance to contest that and you'd have to do that either by an

6      affidavit or and then I would make a determination.  Because I

7      want you to understand this, and I'm sure Mr. Okay has

8      discussed it with you, you've been convicted by a plea in this

9      court of one count of receipt of child pornography.

10                     THE DEFENDANT:  Yes, sir.

11                     THE COURT:  There are different cases, guidance

12     that the Court above me has offered in these kind of

13     situations.  I'm sure Mr. Okay has talked to you about.  One

14     case, the *Dorvee* case, might suggest that some of the increases

15     that are applied are applied in every case and that a court has

16     to carefully scrutinize their application to make sure that an

17     unjust, that is, an unreasonable sentence is not meted out.

18     Another case a subsequent case called the *Aumais* case suggests

19     that *Dorvee* wasn't this blanket statement that you can never

20     give the Guidelines in a child pornography case but rather says

21     that each case must be looked to individually.  But I'm telling

22     you this a big factor as made clear by the *Dorvee* case is

23     whether or not an individual is a predator, poses a threat to

24     children.  Obviously if it's not refuted, and I'm looking at

25     the presentence report, paragraph 19 says that, "Rinere first

1                   USA VS. D. RINERE

2    had sexual intercourse with the victim on October 22nd, 2008.

3    Rinere was 41 years old and the minor was 13 years old.

4              MS. MILLER:  Paragraph 61, your Honor.

5              THE COURT:  The minor reported on May 18th, 2008

6    she was introduced to a long-time family friend of her mother's

7    named David Rinere, a white guy in his forties.  She advised

8    that in late June or early July of 2008, Rinere gave her an

9    AT&T cellular telephone and the two eventually started texting

10   each other.  She reported their texting conversations gradually

11   became more boyfriend/girlfriend-type in nature.  And on

12   September 27th, 2008, they decided to be boyfriend and

13   girlfriend.  The minor victim was 13 years old and Rinere was

14   41.  The victim reported that around October 22nd, 2008 the two

15   had intercourse together.  She reported that Rinere but his

16   mouth on her vagina and put his fingers in her vagina and had

17   intercourse.  She stated that was the first time she ever had

18   sexual intercourse and they had sex about seven more times that

19   day.  The victim reported that over the course of their

20   relationship, approximately five months, they had sexual

21   intercourse approximately 50 times, they also engaged in oral

22   sex and anal sex, and that he put his penis into the victim's

23   mouth six or ten times.  The victim reported that Rinere did

24   wear a condom in the beginning of their relationship but toward

25   the end stopped wearing them.  She advised the last time they

1                           USA VS. D. RINERE

2     had sex was on April 4th, 2009 when their relationship was

3     discovered and her mother called the police.  It was during

4     this period when Rinere instructed the victim to take naked

5     pictures of herself with the cellular telephone he gave her and

6     to send them to his cellular telephone.

7                 I'm just pointing out, so I want you to

8     understand, if you withdraw your objections that, I'm going to

9     say that there being no objection, other than the one stated in

10    your first statement, which I'll review, there being no other

11    objections, the Court accept the statements contained in the

12    presentence investigation report as its findings of fact.  That

13    means I will find that you did engage in that conduct.  So I

14    don't want there to be any mistake about that or any confusion.

15    You have a right to contest the statements contained in the

16    presentence investigation report, if you want.  I'm telling you

17    as clearly as I can that if I find that you have engaged in

18    sexual intercourse, anal intercourse, oral intercourse with a

19    girl 13 and 14, that it may indeed affect the sentence you

20    receive.  Because that is not the typical possession of child

21    pornography -- or, excuse me -- receipt of child pornography

22    case that I get.  The typical case, frankly, Mr. Rinere, is

23    situations where law enforcement monitors computer activity

24    they go into to shared Internet services such as KaZaa or

25    Limewire or Frostwire and they engage in communications with

1                    USA VS. D. RINERE

2    someone who transmits to them child pornography and receives it

3    from them.   That is your typical case.   I'm telling you that.

4    If you want a chance to confer with Mr. Okay, I'll give you

5    that chance or we can proceed to sentencing.

6               THE DEFENDANT:   I'd rather proceed to sentencing,

7    sir.

8               THE COURT:   Are you sure?   Do you understand that

9    if you want to, I will give you a chance to confer with Mr.

10   Okay and I would be willing to adjourn sentencing if you want

11   to.   Do you understand that?

12              THE DEFENDANT:   Yes, sir.

13              THE COURT:   Is it your choice to proceed?

14              THE DEFENDANT:   Yes, sir.

15              THE COURT:   All right.   For purposes of the

16   record, Ms. Miller, has the government received the presentence

17   investigation report?

18              MS. MILLER:   Yes, your Honor.

19              THE COURT:   And, Mr. Okay, have you received the

20   revised presentence investigation report?

21              MR. OKAY:   Yes, your Honor.

22              THE COURT:   Have you gone over it with Mr. Rinere?

23              MR. OKAY:   Yes, your Honor.

24              THE COURT:   And, Mr. Okay, you are, again, so the

25   record is clear, withdrawing the amended statement with respect

1                          USA VS. D. RINERE

2      to sentencing factors which specifically affirmatively objects

3      to the references in the presentence report that the defendant

4      had sexual intercourse, anal intercourse, oral intercourse with

5      the victim; is that correct?

6                     MR. OKAY:  Yes.  We are withdrawing the revised

7      statement that was filed on November 21st.

8                     THE COURT:  Do you agree with that, Mr. Rinere?

9                     THE DEFENDANT:  Yes, sir.

10                     THE COURT:  Ms. Miller, does the government move

11     sentence?

12                     MS. MILLER:  We do, your Honor.

13                     THE COURT:  I do note, Mr. Okay -- bear with me a

14     second.  Ms. Miller, do you have a copy?

15                     MS. MILLER:  The letter request?

16                     THE COURT:  Yes.

17                     MR. OKAY:  I have a copy.

18                     THE COURT:  I do have this request from the

19     government it reads:  Dear Judge Siragusa.  The Defendant David

20     Rinere is scheduled to appear before the Court on Monday

21     November 21st, 2011 at 10 a.m. for sentencing.  Title 18 of the

22     U.S.C. Section 3371(a)(4) provides that the victim of a crime

23     has the right to be reasonably heard at any public proceeding

24     in the district court involving release plea, sentencing or

25     parole proceedings.  Title 18 of the U.S.C. Section 3771(e)

1                              USA VS. D. RINERE

2    defines the term "crime victim" as the person directly and

3    approximately harmed as a result of the commission of a federal

4    offense.  It also provides that, quote, "in the case where the

5    crime victim is under 18 years of age, incompetent,

6    incapacitated or deceased, the legal guardians or

7    representatives of the victim's estate, family members of the

8    crime victim may assume the crime victim's rights.  Serena

9    Richardson is the mother of the victim in this case and will be

10   attending the hearing and has expressed her wish to be heard

11   before the Court sentences the defendant or at any time the

12   Court deems reasonable.  So, pursuant to this request and

13   pursuant -- could you hand that back to Mr. Okay.  And pursuant

14   to the applicable law, the Court will give Ms. Richardson an

15   opportunity to address the Court on behalf of her daughter

16   before the Court passes sentence.

17              So it's clear, what would happen, Ms. Miller, you

18   can make whatever statement you want, and Ms. Richardson can

19   make a statement, and, Mr. Okay, you can comment on anything

20   being said, and, lastly, Mr. Rinere, you will have the

21   opportunity to address the Court before the Court passes

22   sentence.  So, Ms. Miller, again, does the government move

23   sentence.

24              MS. MILLER:  We do, your Honor.

25              THE COURT:  Is there anything you would like to

```
 1                    USA VS. D. RINERE

 2    say?

 3                   MS. MILLER:  Briefly the government relies

 4    principally on its sentencing statement previously filed with

 5    the Court.  I note, again, as the Court has at the time this

 6    conduct occurred just about three years ago now the victim was

 7    then 13, she is now 16.  And to my understanding in speaking

 8    with both her and her family that the adjustment back to being

 9    a normal teenager has been somewhat of a rough road for her.

10    She is receiving counseling and it is her decision not to

11    appear here today because, quite frankly, your Honor, she is

12    trying to move on and thought this would be detrimental to her

13    mental health to come back today.  So that is why her mother is

14    here to speak to the Court.  I will note that we have

15    previously submitted statements, as the Court recognized, from

16    the victim and other family members.  Before I turn over to

17    Mrs. Richardson, I would just note, your Honor, that as the

18    Court has previously noted this is a different case.  This is

19    not simply someone online looking at the images.  Mr. Rinere

20    groomed a 13-year-old girl, got to the point where she believed

21    that they were in a boyfriend/girlfriend relationship, and even

22    he himself admitted he stopped looking at her as a 13-year-old

23    girl, which thereafter led to a significant sexual relationship

24    and a relationship in which he induced and enticed her to take

25    these photographs and even a video of herself masturbating and
```

1                           USA VS. D. RINERE

2     send them to him on his cell phone which he not only kept, but

3     there is evidence that he moved on to a computer at the

4     residence where he was staying.  Your Honor, we have no

5     indication to believe that those images have traveled

6     thereafter.  However, I know it's a concern for the victim to

7     know that these images do exist and wonders whether or not they

8     will come back in the future.  So, the government respectfully

9     requests a Guideline sentence of 188 to 235 months.  We would

10    additionally request that as part of the Court's sentence the

11    Court impose a stay away order for the victim during his term

12    of supervised release.

13              THE COURT:  Okay.  Ms. Miller, would you address,

14    there was one area up for dispute and the Court will rule,

15    before hearing from the victim's mother, the Court wants to

16    rule on the objections.  One major objection is with the

17    distribution.  I take it it's the government's -- so can you

18    comment on the government's position on whether or not the

19    presentence report is correct with the application of the

20    increase for distribution?

21              MS. MILLER:  Your Honor, the government does move

22    and concur with the recommendation contained in the presentence

23    investigation report that the enhancement for distribution

24    pursuant to section 2G2.1(b)(3), again, involving distribution

25    does apply in this case.  Looking at the commentary associated

1                         USA VS. D. RINERE

2     with this section, there are few parameters based on it.  I

3     certainly think in this case we have a case of production and

4     the active distribution related to the transfer of material

5     involving the sexual exploitation of the minor.  Your Honor, in

6     this case the government would respectfully submit there are a

7     number of cases of distribution.  Having enticed the victim to

8     create these images, the defendant thereafter sought to have

9     the images transmitted to him.  Accordingly, she sent them from

10    her cell phone to his cellular phone.  So, again, that is a

11    transfer of material involving the sexual exploitation of a

12    minor attended to the act of production.  We might also argue

13    that the facts that that image was thereafter signed from his

14    cell phone to the computer of the owner whose home he was then

15    staying is almost a second act of distribution moving it to a

16    separate device.  But I think that the primary distribution is

17    having induced the victim to capture these images to then

18    induce her to send them to him.

19                    THE COURT:  Mr. Okay, do you want to comment on

20    that or do you want to rest on your papers?

21                    MR. OKAY:  I'll rest on the papers, but I would

22    just note that as far as the distribution enhancement is

23    concerned, the way that we see it or the way that I see it or

24    the way that it looks to us is that this image was sent from

25    one cell phone to a second cell phone and then allegedly from a

1                          USA VS. D. RINERE

2     cell phone to a computer.  When it was sent to the computer, it

3     was sent to a password protected account on the Jackie Madigan

4     computer, the Dell Dimension L 500 C desktop that in Count 3 of

5     the indictment says it was possessed by the defendant, that is

6     the possession count in the indictment.  And there was no

7     transfer to a third party.  There was no transfer for any

8     pecuniary gain.  They kept this between themselves.  And our

9     position is there was no distribution, not in the manner that

10    is contemplated by the application note to that particular

11    Guideline subdivision.  Our position is that that enhancement

12    should not apply.

13                 THE COURT:  Hang on a second.  I'm reading from

14    the definitional section 2G2.1, definitions under the

15    "Commentaries.  Distribution means any act, including

16    possession with intent to distribute, production, transmission,

17    advertisement and transportation related to transfer of

18    material involving the sexual exploitation of a minor.

19    Accordingly, distribution includes posting material involving

20    the sexual exploitation of a minor on a website for public

21    viewing.  It does not include the mere solicitation of such

22    material by a defendant."  Ms. Miller, what is the mere

23    solicitation of such defendant -- a mere solicitation of such

24    material by a defendant mean?

25                 MS. MILLER:  Your Honor, the government would

1                       USA VS. D. RINERE

2      respectfully submit that is the second half of that refers to

3      Internet transactions more of a third-party advisement type of

4      distribution, which I don't think is happening here.  The

5      government's submission is that the words, "any act," are

6      fairly clear as is the broad including, and, obviously, there

7      is a host of factors that apply there, but there doesn't seem

8      to be this requirement that a third party be involved.

9                       THE COURT:  So what you're indicating is the

10     second phrase means if somebody said, look, I'd like some

11     pictures in a website, that would be distribution.  Okay.  The

12     Court -- first of all, there does not appear to be any factual

13     dispute as to what occurred.  Rather the Court must decide as a

14     matter of law whether the undisputed conduct amounts to

15     distribution.  The Court finds it does.  The Court finds as a

16     matter of law that the conduct as detailed until paragraph 37

17     is the amount to distribution as that term is defined in

18     section 2G2.1(b).  The Court is excluding in its determination

19     the picture of his penis, which he transmitted to the minor.

20     In making its determination, the Court is not considering that

21     but rather is focusing on the fact of the distribution of

22     material involving the minor.  The Court, to the extent it's

23     necessary, makes that finding as a matter of law beyond a

24     preponderance.  Of course, Mr. Okay, you can have an exception

25     to the Court's ruling.

USA VS. D. RINERE

Moving on on your objections.  With respect to
your now only statement with respect to sentencing factors,
will direct that the report reflect that he has scars on his
back.  That is paragraph one on page two.  We'll ask that to be
noted.  I've already dealt with the second objection.  The
third, paragraph 15 relative to paragraph 81 of the presentence
report mental and emotional health.  The defendant notes that
he has been a mental health inpatient and dual diagnose
treatment facility at least six or seven times since the age of
15 for mental disorders, including anorexia and bulimia.
Again, I'll ask that be reflected in the report that is what
the defendant maintains that may be germane to sentencing.  The
defense notes that the list of agencies set forth in paragraph
81 of the presentence report is not a complete list of the
agencies that the defendant has interacted with in his life.
The defendant notes further that the claim of the defendant
that he has been diagnosed as a paranoid schizophrenia at least
four to six times in his life I ask that again the report
reflect that that is what the defendant is maintaining, it may
be germane at sentencing.  Four, relative to paragraph 83 of
the presentence report, substance abuse, the defendant notes
that he has participated in 18 drug rehabilitation programs and
21 drug detoxification programs.  Again, for what it's worth,
I'll ask that be added to the presentence report, again the

1                         USA VS. D. RINERE

2    Defendant's claim.  It goes onto say, the list of substances

3    set forth in paragraph 83 is incomplete and should also include

4    LSD and heroin.  It includes -- I note that paragraph 83 does

5    include LSD.  Unless I'm missing it, it does not include

6    heroin, so we can add heroin to the list.  Finally, page 16,

7    relative to paragraph 85 of the presentence report, the

8    defendant notes that while he worked for Pinkerton Security in

9    Butler, PA he managed 150 employees at 15 job sites.  And when

10   he worked at Burger King in Butler, PA he was the restaurant

11   manager.  Again, I'll ask that be included for whatever it's

12   worth and the defendant is advised.  So the Court now has ruled

13   on all of the either objections or requests for additions to

14   the presentence report.

15                 MR. OKAY:  Your Honor, if I may, this morning we

16   filed an application for an extension of time and in our

17   affidavit we mentioned the name of Serena.

18                 THE COURT:  We asked that that be sealed.  We'll

19   make sure -- that was submitted to me or online now?

20                 MR. OKAY:  No, it's online.

21                 MS. MILLER:  It is my understanding after I raised

22   the issue to Mr. Okay, that he did speak to the clerk's office

23   and they will seal it.

24                 MR. OKAY:  It hasn't been online.

25                 THE COURT:  Kathy, after we're done, can you make

1                         USA VS. D. RINERE

2    sure that that was done.

3                    THE CLERK:  Yes.

4                    THE COURT:  Thank you, Mr. Okay.

5                    MS. MILLER:  Your Honor, Ms. Richardson has

6    returned to the room.

7                    THE COURT:  For the record, again, this is Ms.

8    Richardson, the victim's mother, who is exercising her right to

9    be able to address the Court prior to sentencing.  So, Ms.

10   Richardson, take your time and please go ahead.

11                   VICTIM'S MOTHER:  I would like to start this on

12   how I know David.  David has been part of my whole life.  We

13   were friends even before we were born due to our mothers being

14   friends in high school.  David has always been part of both of

15   my children's lives.  In fact, his youngest son was conceived

16   after our first visit to David and his wife to introduce my

17   friend to my daughter, the victim when she was just a baby.

18   While holding her and playing with her, they decided they want

19   another.  As a close friend to David, I truly thought I could

20   trust this man with everything, even in my children's lives.

21   We had visited David and his wife occasionally throughout the

22   years.  David lived in PA at this time.  The last time we had a

23   chance to visit David, my daughter, the victim, was only 5.

24   David and I had stayed in contact throughout the years via

25   e-mails, telephone and the computer.  But just never got the

```
 1                          USA VS. D. RINERE
 2      chance to get together due to our busy lives.  During those
 3      years so many things had changed in both David and my lives.
 4      In May of 2008, my mother got the horrible call from David
 5      saying that her best friend, Tina, had passed, David's mom.
 6      During those services, which were held back here in Rochester
 7      where she was born and raised, this was the first time I had
 8      seen David in many years.  This is also when David decided to
 9      move back to Rochester to be close to his family and also get
10      reintroduced to my youngest daughter, the victim.  Again, she
11      was just 13 and my oldest was 18.  With all this said, what
12      David has done to my daughter is so unspeakable and we all have
13      to live the rest of our lives.  The fears and distrust he has
14      caused in her life can never be corrected.  My daughter would
15      be doing something as simple as listening to the radio and
16      break out and cry because it was a song that David listened to.
17      For example, she just distrusts men now.  She has lost her
18      connection with her own father due to the lies and untrue
19      statements that David has told her.  David convinced my
20      daughter her father didn't love her, didn't want her and, in
21      fact, never wanted her.  David used that manipulation to get
22      into my daughter's thoughts and mind making her think her
23      father disliked her and never wanted her and she was an
24      embarrassment to him.  Which, to this day, their relationship
25      is still dealing with issues of trust.  David manipulated and
```

1                              USA VS. D. RINERE

2    physically abused my daughter for over eight months.  She has

3    also felt very shameful and embarrassed.  He did sexual things

4    to my child that made her feel very uncomfortable and told her

5    not to mention those actions to anyone because they just

6    wouldn't understand.  Which those scars and thoughts will never

7    leave her.  Let's all just remember she was just 13 and he was

8    43.  It has taken intense therapy three times a week and

9    treatment for her to start to recoup from this abuse.  Again,

10   with the therapy she is receiving she is starting to heal from

11   those scars and wounds caused by David, a so-called friend.

12   But the memory will haunt her forever.  What this has done to

13   me as a mom watching, watching all these horrible things unwind

14   is horrifying.  Knowing that the things that David did to my

15   daughter makes me sick to my stomach.  As a mom, I have had to

16   watch my daughter cry herself to sleep at night, flip out and

17   scream if she just drops a glass of milk worrying that somebody

18   was going to blame her because she did something wrong.  He

19   took herself esteem away from her.  If someone walks up behind

20   her, she would jump through the roof and get extremely scared.

21   She was constantly looking over her shoulder to see if he was

22   behind her due to she was afraid of him getting her again.  The

23   time and effort in taking her to all these appointments and the

24   energy just trying to hold her while she was in tears, wow,

25   what a toll it's taken.  Staying up all night holding my

1                          USA VS. D. RINERE

2     daughter because she was afraid to go to sleep.  Watching her

3     cry when she finally gets to sleep because she was dreaming.

4     The emotional roller coaster as a mom having to watch her child

5     heal from abuse from a man who was a friend.  I myself have had

6     to go to therapy to get help for myself to learn how to trust

7     again and to learn not to blame myself for what David did to my

8     child.  I have also had to go through classes to be able to

9     help my daughter heal from this abuse.  I have missed a lot of

10    time of work going to and from therapy appointments for my

11    daughter and myself and not to mention the financial toll it's

12    taken by missing work for all these appointments and paying for

13    therapy and counseling for two.

14                  With the acknowledged -- with the knowledge I have

15    now, I truly believe David is a very dangerous man.  He knows

16    how to manipulate, lie, cheat and abuse not only the people who

17    trust him but the system.  David has the ability to get people

18    he talks to to think he is a good man.  This is a mask he has

19    mastered.  Well, from everything that me and my child have had

20    to endure over the past three years is unspeakable.  The

21    actions and sexual abuse he did against a small child is

22    horrific.  I believe now from the bottom of my heart that David

23    doesn't have remorse for what he has done to my daughter.  He

24    will do this again if he gets out.  David is a man who can't be

25    trusted.  He is a man that needs to be held accountable for all

1                        USA VS. D. RINERE

2    of the horrible things he has done to a 13-year-old child.  I

3    also believe that he is a threat to my daughter's safety.  I

4    believe he will try to locate her, harm her because she broke

5    her silence after his eight months of abusing her.

6              And in closing, what I would like to ask is for

7    David to serve life in prison without the chance of parole so

8    he cannot harm my daughter or someone else's again.  But I

9    believe the charges you have in front of you do not hold that

10   kind of sentence but I would plead the Court to hold David

11   accountable to the fullest for his actions of abuse,

12   manipulation and vile behavior to a child to the max sentence

13   possible.  Whatever the max sentence may be that is allowed for

14   the charge you have in front of you, I would ask you sentence

15   David to the max.  Thank you.

16             THE COURT:  Thank you very much.  Mr. Okay, is

17   there anything you would like to say on behalf of Mr. Rinere

18   before the Court passes sentence?

19             MR. OKAY:  Yes, your Honor.  We have just heard a

20   very powerful statement.  And, your Honor, if the Court is

21   inclined to impose a Guideline sentence, we'd ask the Court to

22   impose a sentence at the low end of the Guideline range.

23   However, we are also asking the Court, consistent with what's

24   in the plea agreement, to consider a sentence at the mandatory

25   minimum for the offense of conviction.  And our position is

1

2    that in light of the Second Circuit authority, such a sentence

3    would not be procedurally or substantively unreasonable.  Thank

4    you.

5              THE COURT:  Thank you.  Mr. Okay, the Court

6    appreciates your efforts on behalf of Mr. Rinere and I'm sure

7    he does as well.  Mr. Rinere, is there anything you would like

8    to say to the Court before I pass sentence?

9              THE DEFENDANT:  Yes, your Honor.

10              THE COURT:  Please go ahead.

11              THE DEFENDANT:  You know, she just stood there and

12    said that I'll never feel any guilt for what I did.  I was 263

13    pounds when I came into custody.  I don't sleep and I don't

14    eat.  There isn't a day that doesn't go by that I don't have

15    her on my mind and what I did, how I destroyed her, her mother,

16    her grandmother.  They were all my family.  That was the only

17    family that I had left.  If I had any idea of what I was doing,

18    I wouldn't have been doing it.  I didn't wait until I was 41

19    years old to become a pedophile and a child pornographer.  The

20    amount of alcohol and drugs that I was consuming, I was in a

21    total blackout 90 percent of the time.  And I am not by anyway

22    saying that that was the cause.  I accept responsibility for

23    what I did.  It was my actions for drinking that are what were

24    the cause, but, I don't know, maybe it was because I've been

25    fighting since I was 11 years old drug addiction and alcohol,

2    I've spent all my time trying to fix what was wrong with me.  I

3    didn't want to get into any of this.  If you look over my

4    criminal history, my criminal history shows I'm a drunk.  I've

5    never hurt anybody.  I've never had any victims.  I don't

6    believe in violence.  I've never been part of a gang.  I never

7    worked for the mob.  I never sold drugs.  I never had guns.

8    I've never done any of it because I always tried to stay within

9    the bounds of the law.  If I could turn back the hands of time,

10   I would give my life to give back what I took from her.  I

11   never wanted to hurt her.  I never wanted to hurt anybody.  I

12   spend -- maybe it was because I was so depressed and so grieved

13   after watching my mother die for six years and then being given

14   two minutes to decide whether they continue working on her or

15   let her go.  Maybe it was the insane amount of drugs and

16   alcohol I was using that made everything seem like it was okay

17   there was nothing wrong with it.  Maybe it was complete

18   insanity that caused me to do something this horrific and

19   stupid, but to ever do this again to somebody else never.  I've

20   never done this before, never been accused because I hate

21   people like me like this, people that do things like this.  I

22   never wanted to be before another court and never want to be in

23   another jail, never want to have any of this happen.  I never

24   want to hurt.  I want to find my own piece of the world.  When

25   Carrie's sister used to visit me in jail, Rachel, her and her

1                          USA VS. D. RINERE

2    friend Grace, they all told me they knew it wasn't just me, it

3    was the situation that I was put in, nobody watched what I was

4    doing, nobody watched the amount of drugs and alcohol I was

5    using.  Nobody cared what went on around them.  They want me to

6    continue on because Rachel wants me to be there to see

7    Jaelynne.  She brought her to the jail for me to hold her one

8    time before she left for CA.  I'm the one that bought Jaelynne

9    the first crib.  Does that sound if I'm that kind of monster

10   that is going to go out and continually destroy people, do you

11   think that is what Rachel would want her little girl living in?

12   I'm not that kind of person.  I need help.  What I want to do

13   is go to the prison and utilize any resource that is available

14   to me to get the help so I can be a better person when I come

15   out than I was when I went in.  I don't ever want to be in this

16   situation.  I never want to hurt anybody again.  I can't live

17   with what I've done to myself now.  I've been told by two

18   doctors in both jails that if I don't start putting the

19   vitamins and minerals back in my body, I'll end up shutting

20   down.  And you know what?  That's okay with me.  Thank you.

21                  THE COURT:  The Court is now then prepared to pass

22   sentence on you, Mr. Rinere.  And, in that regard, I have

23   received the presentence investigation report and other

24   submissions to which I've referred.  Additionally, I've

25   listened to what Ms. Miller said and wrote, what Mr. Okay said

1                    USA VS. D. RINERE

2     and wrote, what you said and certainly to what Ms. Richardson

3     said, and wrote.  Before proceeding, I just think it's

4     appropriate to read the letter from the victim in this case who

5     wrote to me as follows:  Your Honor, this man has severely

6     affected my life.  All the way from being 13 years old,

7     innocent and getting As in school to having many tremendous

8     breakdowns, counselors and health issues.  Not only have I had

9     problems gaining stability mentally, but also problems

10    physically.  Physical problems such as stress, induced issues

11    and mental problems is in myself having to take medications to

12    get myself to this point.  I have become a strong willed young

13    woman now.  It has taken me a very long time in order to find

14    who I am again and realize justice will be served thanks to

15    you.  Last, but not least, writing this letter has shown not

16    only my family but myself as well that I have the strength to

17    face and move on from this.  I currently am in the process of

18    raising my grades, having a summer job, and having a very

19    supportive boyfriend that has stood behind me.  I have faith in

20    you to serve this man a sentence that you would give if this

21    was your child or loved one.  Thank you.

22                    I also received a letter from the victim's

23    grandmother that reads:  Your Honor, my name is Mary Jane

24    Bigato.  I am the victim's grandmother.  It saddens me to feel

25    that I need to write this letter to you regarding David Rinere.

2    I've known David his whole life.  I was friends with his mother

3    for over 55 years.  I watched David growing up here in

4    Rochester and knew of the trouble that David got into in grade

5    school, his use of drugs and alcohol at a young age.  I knew

6    when he started to have sexual relationships with his

7    babysitter.  I know what happened to the first young girl that

8    David got pregnant and during her pregnancy David wasn't

9    allowed to be around her or their child because of abuse.

10   David has had no contact with his first son.  David, his mother

11   and the first wife lived here in Rochester for several years.

12   I've seen the many apartments they have lived in that were

13   damaged by David's hands.  I saw many bruises on his wife, but

14   they passed it off as her being clumsy.  What did I know back

15   then.  They all moved to Pennsylvania about 20 years ago.  The

16   pattern started out pretty good, David had a job and seemed to

17   be doing fine.  David and his first wife have three children,

18   two boys and a girl.  The boys' ages range from 14 to 20 and

19   girl to 17.  His first wife has orders of protection against

20   David to completely stay away from her and her three children.

21   The last one came because of a car accident because David was

22   driving with no license and nearly killed his older son.

23   During his first marriage while David was working, David was

24   having an affair with a young 16-year-old girl who later became

25   his second wife, David was 34 at the time.  In visits to PA,

1                          USA VS. D. RINERE

2     which there were six different places they at, I saw the same

3     damages in each of those apartments.  Everything went back to

4     the ugly man.  David's second marriage, he has two daughters, 4

5     and 7.  That marriage only lasted a few years.  My friend and

6     David were now living in a different place, everything seemed

7     okay.  David was clean of any alcohol, he was getting help.  I

8     still couldn't understand why David's own family wanted nothing

9     to do with him and his mother.  As a favor to David's mother

10    only two short months before she passed away, she asked me if I

11    could please take care of David and I said yes.  A month after

12    my friend's death we brought David back to Rochester.  He was

13    still getting the help he needed.  And then all hell broke out.

14    I couldn't believe that David could have created such chaos and

15    destruction in my family, especially to my granddaughter, the

16    victim.  David not only destroyed her innocence but her trust.

17    Three years of counseling and therapy, the victim is starting

18    to come.  And she has her ups and downs from grades in the 90s

19    to she is struggling to pass.  David's lies about the victim's

20    own father is a work in progress.  The victim still has a hard

21    time trusting.  David is a menace to society.  David preys on

22    young innocent girls.  He is a predator and needs to stay in

23    prison for as long as possible so he cannot hurt another young

24    girl.  Now, at the outset, let me make one thing clear.  With

25    respect to the letters that I've received from the victim's

1                       USA VS. D. RINERE

2    mother, the victim herself and the victim's grandmother and

3    with respect to the statements Ms. Richardson made in court,

4    the Court is not considering them on the sentence I should

5    give.  That is my responsibility and I recognize that.  Rather

6    I'm considering it, Mr. Rinere, as an indication of the

7    seriousness of the crime, a legitimate factor for a court to

8    consider in sentencing.

9             In any event, as I've indicated, the Court has

10   considered all of the submissions that I referred to, including

11   the presentence investigation report, and the comments made

12   here in court and the Court is accordingly prepared to pass

13   sentence.  Mr. Rinere, you stand before me, you are now 44

14   years old, born on March 18th of 1967.  And you're here for

15   sentence after pleading guilty to Count 2 of the subject

16   indictment, receipt of child pornography, a class C felony in

17   violation of Title 18 of the U.S.C. Section 2252A(a)(2).  It's

18   punishable, as we discussed when you pled guilty, by a minimum

19   of five years in prison and a maximum of 20 years and a fine of

20   up to a quarter of a million dollars or both.  On February 16th

21   of 2011, you appeared before me.  You pled guilty to this

22   charge.  Your plea was by way of a written plea agreement

23   pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal

24   Procedure.  In other words, you understood, Mr. Rinere, at the

25   time you pled guilty, that your plea was non-revokable, and it

```
 1                         USA VS. D. RINERE
 2    was entered with the full understanding that any calculations
 3    or recommendations contained in the plea agreement would not be
 4    binding upon me and that I could impose upon you the maximum
 5    sentence allowable under law, including a minimum of five
 6    years, a maximum of 20 years, a quarter of a million dollar
 7    fine or both.  As a condition of the plea, the government
 8    agreed not to oppose a recommendation that in calculating the
 9    advisory Sentencing Guidelines about which you and I spoke that
10    the Court reduce your offense level by a total of two points
11    for what's called acceptance of responsibility.  I explained to
12    you that you didn't get that automatically, that you had to
13    convince me you were remorseful for what you did.  Now, that
14    you have, frankly -- there certainly was an issue in many my
15    mind based on what you said in the plea colloquy as pointed out
16    by Ms. Miller based on the outstanding indictments for which
17    there was a probable cause finding in Federal Court whether
18    that you were sincere in your acceptance, however, having
19    withdrawn that amended sentencing statement, I do feel that
20    you, and based on what you said to me, I will give you the
21    benefit of the doubt and find that you have accepted
22    responsibility and give you the benefit of that reduction in
23    calculating your advisory sentencing Guidelines.  And,
24    nonetheless, in your plea of guilty you did admit to me that on
25    or about October 24th, 2008 and April 24th, 2009 between those
```

```
 1                          USA VS. D. RINERE
 2      dates that you were involved in a relationship with KM a minor
 3      who at the time was under the age of 15 who lived here in the
 4      western district.  You acknowledged to me that you did have a
 5      relationship with her during the course of which you employed
 6      and used, enticed and persuaded her to produce a sexually
 7      explicit video and photographs of yourself using a cellular
 8      telephone.  And you knew full well at the time you did this she
 9      was 13.  You admitted to me that at your request she
10      transmitted the sexually explicit photographs and video to your
11      cellular phone and you told me that on or about October 24th of
12      2008 that you received those photographs on your phone.  Again,
13      at the time you received them that you knew she was thirteen
14      years old.  You acknowledged that the images were shipped and
15      transported using a Samsung cellular phone and you didn't
16      dispute based on the government's proffer Sampson does not
17      manufacture the cellular phone, that they had to travel outside
18      of the United States, that the images and transmission did
19      involve a means or facility of Interstate or foreign commerce.
20                      This is not your first involvement with the
21      criminal justice system.  As reflected in the presentence
22      investigation report, you do have prior involvements.  And in
23      1987, you were convicted of operating a motor vehicle while
24      intoxicated.  In 1999, you were convicted of driving while
25      under the influence of alcohol.  That was in Pennsylvania.
```

1                          USA VS. D. RINERE

2     1996 you were convicted of criminal trespass in the second

3     degree, again in Pennsylvania.  For that you received five

4     months jail and two years probation.  You have a disorderly

5     conduct plea out of Irondequoit town court.  And it looks like

6     you have a plea to simple assault in 2005 in Pennsylvania.

7                 As we discussed when you pled guilty, Mr. Rinere,

8     sentencing in this action is pursuant to the Sentencing Reform

9     Act of 1984.  Mr. Okay has indicated that he has received a

10    copy of the presentence investigation report.  Is that correct,

11    Mr. Okay?

12                MR. OKAY:  Yes.

13                THE COURT:  Did you review it with Mr. Rinere?

14                MR. OKAY:  Yes.

15                THE COURT:  Mr. Rinere, have you read the report

16    yourself?

17                THE DEFENDANT:  Yes, sir.

18                THE COURT:  The Court has ruled on objections made

19    with respect to the enhancement and directed certain additions

20    to the presentence report based on your sentencing statement.

21    The Court does otherwise adopt the statements contained in the

22    presentence investigation report as its findings of fact.  In

23    deciding on a reasonable and appropriate sentence, the Court is

24    aware of, Mr. Rinere, of its responsibility to impose a

25    sentence sufficient but not greater than necessary to comply

1                              USA VS. D. RINERE

2      with the purposes of sentencing as set forth in 18 U.S.C.

3      Section 3553.  As required by that section, I've considered all

4      of the following.  I've considered the nature and circumstance

5      of your crime and your history and characteristics.  I've

6      considered the need for the sentence imposed to reflect the

7      seriousness of what you did.  And, again, the Court considers

8      the victim impact letters on that point, the seriousness of the

9      crime and no other.  I've considered the need for the sentence

10     imposed to promote respect for the law, and provide you with a

11     just punishment, to send a message of deterrence, to tell the

12     community this kind of conduct simply cannot be tolerated.

13     I've considered the importance of protecting the public from

14     further crimes that you -- any further crimes committed on your

15     behalf to make sure that that doesn't occur.  I've considered

16     the need to provide you with whatever care, training or

17     treatment you need in the most effective manner.  I've

18     considered as well the importance of avoiding unwarranted

19     sentencing disparities, that is, differences among defendants

20     with similar records who have been found guilty of similar

21     conduct.  And I've considered the those allowed under the

22     statute, a potential of 20 years, and those recommended under

23     the Guidelines.  With respect to the advisory sentencing

24     Guidelines in accordance with the Second Circuit's direction in

25     the *Crosby* and *Gonzalez* cases, I've made the following findings

1                          USA VS. D. RINERE

2    which have allowed me to properly consider the advisory

3    Sentencing Guidelines along with all other sentencing factors.

4    I've considered that your base offense level is 32.  I've

5    determined there should be some enhancements.  First, a

6    two-level increase pursuant to the Guideline Section

7    2G2.1(b)(1)(B) since the offense involved a minor who is more

8    than 12 years old but under 16.  Another two-level increase

9    pursuant to Guideline Section 2G2.1(b)(2)(A) since the offense

10   involved the commission of a sexual act, we detailed those

11   acts.  I've also ruled against your objection and found that

12   the government could establish as a matter of law and certainly

13   by a preponderance of evidence that there should be a two-level

14   increase for distribution.  If you take those increases to the

15   base offense level that is a total of six levels in increases

16   and takes your adjusted offense level is 38.  However, the

17   Court will give you the benefit of that two-level reduction

18   discussed in the plea agreement for acceptance, which takes you

19   down to a 36.  Your criminal history category is 1.  That is

20   what you understood in the plea agreement and that is what the

21   plea agreement recommends.  With a criminal history category of

22   1 and an offense level of 36, the recommended range under the

23   advisory sentencing Guidelines is 188 to 235 months in prison.

24   The recommended period of supervised release is recommended

25   under the advisory Guidelines pursuant to policy statement

1                        USA VS. D. RINERE

2      5D1.2(a)(2) is life.  You're not eligible for probation.  The

3      fine range is 2000 -- excuse me -- 20,000 to 200,000.  And

4      restitution, in this case, Ms. Miller, is not an issue; is that

5      correct?

6                   MS. MILLER:  That is correct.

7                   THE COURT:  So those would be my options under the

8      advisory Guidelines.  However, in the plea agreement, Mr. Okay

9      reserved on your behalf an important right and that is the

10     right to argue to me for a sentence outside or less than the

11     Guidelines.  Specifically in paragraph 16, Mr. Okay reserved

12     the right to, quote, "recommend a sentence outside of the

13     sentencing Guideline range."  And he has done that in his

14     sentencing memorandum.  When such an application is made the

15     Court first is obligated to consider whether any departure

16     authority exists within a Guideline analysis.  In regard to his

17     basis for seeking a downward departure or a sentence outside of

18     the Guideline range, Mr. Okay directs the Court to the *Dorvee*

19     case.  *Dorvee* didn't dispute really the application of certain

20     enhancements, but, as Mr. Okay points out, suggested that the

21     Guidelines -- the Guidelines, in certain respects, have no

22     empirical basis, and could thus lead to unreasonable sentences.

23     However, as to a Guideline analysis, the Court finds that there

24     is no factor identified individually or in combination which

25     would justify the Court departing from the Guideline range.

1                         USA VS. D. RINERE

2      However, that doesn't end the analysis.  The Court must next

3      consider whether there is any basis for giving you a

4      non-Guideline sentence.  And here, of course, as Mr. Okay

5      suggests in his submission, the Court has considerably more

6      discretion.  And here he relies on the *Dorvee* case.  And

7      certainly *Dorvee* did question the application of certain

8      enhancements that are typical with child pornography cases such

9      as the use of a computer.  However, there is no such

10     enhancement here.  The number of images, however there is no

11     such enhancement here.  The fact that many child pornography

12     cases involve enhancements for sadistic images or images of

13     violence, again, there are none here.  So the Court is really

14     not seeing the facts and circumstances of this case, the

15     applicability of *Dorvee*.  Additionally, the Court might add,

16     the Court made a point in *Dorvee* to indicate that defendant --

17     that is *Dorvee* -- never acted out, never engaged in sexual

18     activity involving children, which is certainly not the case

19     here.  Additionally the Court notes *United States vs. Aumais* at

20     656 F. 3d 147, 156 to 157 where the Circuit noted, quote, "as

21     substantive reasonableness *Aumais* principally relies on our

22     recent decision in *Dorvee* to support the argument that the

23     sentence was greater than necessary to serve the purpose of

24     sentencing.  This argument too is without merit.  *Dorvee*

25     observed that USSG Section 2G2.2, the Guideline at issue here,

1                        USA VS. D. RINERE

2    can, unless applied with great care, leave with sentences that

3    are inconsistent with what 3553 requires because the

4    enhancements in that Guideline routinely result in Guideline

5    projections near or exceeding statutory maximum even in the

6    run-of-the-mill cases.  The various child pornography

7    enhancements applied in *Dorvee* resulted in a Guideline sentence

8    at the lower end -- at the low end was 22 months longer than

9    the statutory maximum.  So the Court is aware of *Dorvee* and the

10   Court is aware of *Aumais* and the Court has applied the

11   Guidelines here with great care.  In doing so, the Court

12   determines that a non-Guideline sentence is not warranted.  The

13   Court has considered the factors of the *Dorvee* case.  This is

14   clearly a serious crime.  And it's certainly made more serious

15   by the facts and circumstances that are undisputed in this

16   case.  So, the Court on careful consideration determines that

17   there is nothing identified here which would lead the Court to

18   a non-Guideline sentence.  To the extent that really raised for

19   the first time in this proceeding is this idea that Mr. Rinere

20   was under the influence of drugs or alcohol or under some

21   psychological issues relating to the death of his mother or

22   history of some issues of mental health treatment those really

23   were not identified up to his comments here in court.  And, in

24   any event, with respect to a Guideline analysis, those are all

25   disfavored factors, and the Court certainly finds there is no

1                    USA VS. D. RINERE

2      evidence they were present to such a degree that would take

3      this case out of the heartland of cases for a Guideline

4      sentence.  Moreover, in terms of a non-Guideline sentence, the

5      Court figures -- the Court determines they don't justify

6      something outside of the Guidelines.  Frankly, Mr. Rinere, your

7      suggestion that if you had any idea of what you were doing --

8      that you didn't have any idea of what you were doing, you would

9      never hurt the victim intentionally, suggestion that you must

10     have been insane, that it was alcohol, that nobody helped you,

11     that it was because your mother had died, sound to me like the

12     devil-made-me-do-it argument.  And I don't accept them.  You're

13     an adult man, obviously intelligent, you knew exactly what you

14     were doing.  And I'll put it to you directly.  You are a sexual

15     predator.  It's made more egregious by the fact that this child

16     was a family friend.  That you abused this position of trust.

17     It certainly sounds undisputed that the victim's family,

18     including her grandmother, reached out to try and help you out

19     of a sense of loyalty that the grandmother had for your mother

20     and you used that position to engage in the most unthinkable

21     conduct.  In a civilized society, Mr. Rinere, we have a

22     responsibility to protect our children, not to violate them.

23     And that is exactly what you did.  You engaged in conduct that

24     will forever affect this child.  And to say that for you, a

25     family friend, to do so is despicable is an understatement.

1            USA VS. D. RINERE

2            Now, I've considered the Guidelines carefully.

3    I've considered all of the facts and circumstances of this case

4    and the Court determines that in your case a sentence of 228

5    months, 19 years, is the sentence sufficient but not greater

6    than necessary to comply with all the sentencing objectives as

7    set forth in 18 U.S.C. Section 3553.  I've considered the facts

8    and circumstances as they apply to this case, and have

9    determined, as indicated, that such sentence is sufficient but

10   not greater than necessary to comply with those sentencing

11   requirements.

12           The Court then, Mr. Rinere, has carefully

13   considered all of the facts and circumstances surrounding your

14   case as well as the objectives of sentencing as set forth in 18

15   U.S.C. Section 3553.  Pursuant to that section of law and

16   pursuant to the Sentencing Reform Act of 1984 it is the

17   judgment of the Court that you, David R. Rinere, are hereby

18   committed to the custody of the Bureau of Prisons to be

19   imprisoned for a term of 228 months, that is 19 years.  Now,

20   the Court fully recognizes that this is close to the statutory

21   maximum.  It is certainly within the Guideline range, but close

22   to the statutory maximum.  The Court believes that that is

23   appropriate in this case.  And in doing so, the Court has

24   followed the direction of *Aumais* and the Court has carefully

25   applied the Guidelines in this case and has considered those

1                         USA VS. D. RINERE

2    objectives of sentencing.  Why 228 months?  To the extent it's

3    necessary, since the range the Court has found -- and I want to

4    clarify that range.  The Court does find for purposes of the

5    record, in case I did not indicate it, that with a criminal

6    history category of -- I did indicate, I'm sorry.  That the

7    sentencing range indicated in the plea agreement is

8    appropriate.  And, however, the Court, when the sentencing

9    range exceeds 24 months, which it does in this case, is

10   required to state its reason for imposing a sentence at a

11   particular point.  Frankly, I think that a sentence near the

12   statutory maximum is necessary not only to send a strong

13   message to the community that you cannot engage in this

14   horrific conduct, that, again, we should be protecting our

15   children not abusing them, but, frankly, to send, I think it's

16   an appropriate sentence for you to make sure you never do this

17   kind of thing again.  The cost of incarceration fee is waived.

18   But, again, you are committed to the custody of the Bureau of

19   Prisons to be imprisoned for a term of 228 months.  It is

20   ordered that you pay to the United States a fine of $500.

21   Interest on the fine is waived.  While incarcerated, if you are

22   non-UNICOR or UNICOR grade 5, you are to pay installments of 25

23   per quarter.  If assigned grades one through four, you're to

24   pay installments of 50 percent of your monthly pay.  While on

25   supervised release, you shall make monthly payments at the rate

1                          USA VS. D. RINERE

2     of 10 percent of your monthly gross income.  Payments are be to

3     made in the form of a money order made payable to Clerk, 304

4     U.S. District Court, 68 Court Street, Buffalo, New York, 14202.

5     It's further ordered that you pay to a United States a special

6     assessment of $100, which is due immediately.  Upon your

7     release from imprisonment, you shall be placed on supervised

8     release for a term of 30 years.  Now, why 30 years?  Well, I

9     will explain.  And the Court fully understands I could give you

10    up to life under the plea agreement.  However, if memory serves

11    me correctly, you were arrested in 2009, so you have

12    approximately two years in for which you'll get credit.  If you

13    behave inside on a 19-year sentence, you'll do approximately 16

14    years.  If you take away the two years you've done, that is 14

15    years.  You'll be 58 approximately when you get out.  I think

16    30 years is sufficient to put you in your mid to late 80s to

17    guarantee the safety of children.  The Court determines any

18    less measure would put children at risk.  But in imposing the

19    sentence, the Court considers it's reasonable after considering

20    all of the 18 U.S.C. Section 3553 factors.  While on supervised

21    release, you shall not commit another federal, state or local

22    crime.  You are prohibited from possessing a firearm,

23    ammunition or other dangerous device.  In addition, you shall

24    not possess a controlled substance and shall comply with the

25    standard conditions that have been adopted by this Court.

```
 1                          USA VS. D. RINERE
 2       Since the instant offense occurred after September 13th, 1994
 3       drug testing is required by the Crime Control Act.
 4       Additionally, you shall cooperate in the collection of a DNA
 5       sample as required by the Justice for All Act of 2004.   In
 6       addition, you shall comply with the following special
 7       conditions.   You must provide the United States Probation
 8       Office with advance notification of any computer, automated
 9       service or connected devices that will be used during the term
10       of supervision.   Probation office is authorized to install any
11       application as necessary to surveil all activity on any such
12       computers, connected devices which you own or operate.   You are
13       -- you may be required to pay the cost of monitoring services
14       at a monthly rate determined by the probation office.   The rate
15       and payment schedule are subject to periodic adjustments by the
16       probation office and the probation office shall be informed via
17       electronic notification of any -- excuse me -- shall be
18       notified via electronic transmission of any impermissible or
19       suspicious activity or communications occurring on such
20       computer or connected devices consistent with the computer
21       monitoring policy in effect by the probation office.   As
22       triggered by impermissible or suspicious activity, you shall
23       consent to and cooperate with the unannounced examinations of
24       any computer equipment with which you own or use.   The
25       examination shall include, but is not limited to, retrieval and
```

1                          USA VS. D. RINERE

2      copying of all data from any such computers, connected devices,

3      storage media and internal or external peripherals and may

4      include the removal for the purpose of conducting more thorough

5      inspection.  You are to enroll, attend and participate in

6      mental health intervention specifically designed for the

7      treatment of sexual offenders as approved by the probation

8      office.  You're to comply with the mandates of treatment,

9      treatment program and are not to leave treatment until

10     discharge is agreed to by the probation office and the treating

11     agency.  You shall not have deliberate contact with any child

12     under 18 years of age unless approved by the probation office.

13     You shall not loiter within 100 feet of school yards,

14     playgrounds, arcades or other places primarily used by children

15     under the age of 18.  You shall -- you are prohibited from

16     possessing or downloading any child pornography as defined in

17     18 U.S.C. Section 2256 to include as follows:  Any visual

18     depiction, including any photograph, film, video, picture or

19     computer or computer-generated picture or image whether made or

20     produced by electronic, mechanical or other means of sexually

21     explicit conduct.  You shall register with the state sex

22     offender registration agency in any state where you reside, are

23     employed, carry on a vocation or are a student and provide

24     proof of registration to the probation office.  You are to

25     submit to a search of your person, house, residence, vehicle,

1                          USA VS. D. RINERE

2       papers, and other electronic communications or data storage

3       devices or media and effects and consent to a search at any

4       time with or without a warrant by any law enforcement or

5       probation officer with reasonable suspicion concerning a

6       violation of a condition of supervised release or unlawful

7       conduct on your part by any probation officer in the lawful

8       discharge of that Officer's supervisory functions.  In order to

9       monitor your compliance with not buying or subscribing to

10      networks that provide child pornography.  You are to provide

11      the probation office with access -- excuse me -- to any

12      requested personal and/or business financial information.  You

13      shall submit to substance abuse testing to include urinalysis

14      and other testing.  The details of such testing to be approved

15      by the probation office.  If substance abuse is indicated by

16      the testing, you are to complete a drug/alcohol evaluation and

17      enter into any treatment as deemed necessary by the probation

18      office and/or the Court.  Finally, if treatment is necessary,

19      you're not to leave treatment until discharge is agreed to by

20      the probation office and/or the Court.  And while in treatment

21      or after discharge from treatment, you're to abstain from the

22      use of alcohol.  Finally, you're required to contribute to the

23      cost of any services rendered in an amount determined by the

24      probation office based on the -- based on your ability to pay

25      and availability of any third-party payment.  Finally, as a

1                        USA VS. D. RINERE

2     condition of supervised release, you are to stay away from the

3     victim, not have any communication, whether by phone, in

4     person, e-mail, regular mail or in any form whatsoever with

5     her.  That is the sentence of the Court.  Now, since this

6     sentence is in accordance with the terms and conditions of the

7     plea agreement, pursuant to the plea agreement -- excuse me.

8     You do have your right to appeal the sentence imposed.  Bear

9     with me one moment.  Since this sentence exceeds the 188 months

10    for which had you agreed to waive your right to appeal or

11    otherwise collaterally attack, I am informing you, Mr. Rinere,

12    that pursuant to Federal Rule of Criminal Procedure 32(c)(5)

13    that you have the right to appeal the sentence imposed.  If you

14    are unable to pay the cost of an appeal, you may apply for

15    leave to appeal in forma pauperis.  However, it's the practice

16    in this district, Mr. Okay will represent you on any appeal

17    should you wish to file.  That is the sentence of the Court.

18    Ms. Miller, is there any charges outstanding?

19              MS. MILLER:  The government moves to dismiss the

20    remaining counts in the indictment.

21              MR. OKAY:  Your Honor, would the Court be inclined

22    to make a recommendation for the Bureau of Prisons drug

23    treatment program and house Mr. Rinere as close to the Western

24    District of New York geographically as possible.

25              THE COURT:  Does he have relatives here?

1                          USA VS. D. RINERE

2              THE DEFENDANT:  I have a fiance that is here.

3              THE COURT:  All right, I will.  Mr. Okay, pursuant

4    to your request, I recommend that Mr. Rinere be housed in any

5    suitable Bureau of Prisons facility as close to this area as

6    possible so he can stay in contact with his fiance.  I will

7    also recommend to the Bureau of Prisons that Mr. Rinere be

8    allowed to participate in any suitable Bureau of Prisons

9    substance abuse therapy program that he qualifies for and that

10   he is willing to participate in.  With respect to my first

11   recommendation about being housed in a suitable Bureau of

12   Prisons facility as close to this area as possible, it may be,

13   as you know, Mr. Okay, that that is going to be in Butner,

14   North Carolina or some other facility where they have -- where

15   they specifically have the services designed to offer treatment

16   for sex offenders.  Thank you very much.

17             MS. MILLER:  Your Honor, with respect to the

18   Government's respect to dismiss the outstanding counts of the

19   indictment.

20             THE COURT:  Yes, the Court will grant that.

21             MS. MILLER:  Thank you, your Honor.

22

23

24

25

1

2

3

4                                    *     *     *

5                          CERTIFICATE OF REPORTER

6

7        I certify that the foregoing is a correct transcript of the

8     record of proceedings in the above-entitled matter.

9

10    S/ Karen J. Bush

11
      Official Court Reporter
12

13

14

15

16

17

18

19

20

21

22

23

24

25